# FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Guy Cardamone, Madison Supervisor
John W. Campion
Alexandra Douglas
Ramuel R. Figueroa
Matthew Giesfeldt
Jonathan Greenberg
Gabriela A. Leija
Julie K. Linnen
Colin McGinn
Dennise Moreno
Tom Phillip
Alex Vlisides

411 East Wisconsin Avenue
Suite 2310
Milwaukee, Wisconsin 53202

Telephone 414-221-9900
Facsimile 414-221-9901

June 21, 2026

Honorable Lynn Adelman
United States District Court
Eastern District of Wisconsin
517 E. Wisconsin Ave.
Milwaukee, WI 53202

RE:     *United States v. David Hammond,* case no. 25-cr-211
        Sentencing on Monday, June 29, 2026

Dear Judge Adelman,

David Hammond, through counsel, respectfully submits this letter to briefly address the factors under 18 U.S.C. § 3553(a) and to respond to the government's sentencing memorandum. He joins the parties' joint recommendation for a custodial sentence of 10 years. He additionally asks the Court to recommend that the Bureau of Prisons designate him to FCI Elkton or FSL Elkton or, alternatively, to the closest medium to low-security Sex Offender Management Program (SOMP) facility offering comparable offense-specific treatment.

## I.     Response to the Government's Memorandum

The government accurately emphasizes the seriousness of this offense and the impact on real victims. Mr. Hammond does not dispute that reality. As the government notes, this is his second conviction for conduct involving child sexual-abuse material, and his new offense occurred while on supervision. Those facts underscore Mr. Hammond's need for

Honorable Lynn Adelman
June 22, 2026
Page 2

structured, evidence-based treatment targeting the thinking patterns, emotional dysregulation, secrecy, and isolation that contributed to his relapse.

The government highlights that punishment and prior supervision did not deter him. Mr. Hammond agrees with that assessment. The failure of deterrence demonstrates that incapacitation alone has not interrupted his cycle of behavior. Treatment that is offense-specific, intensive, and delivered in an SOMP environment is essential to protecting the public in the long term.

Nothing in the government's memorandum suggests that BOP treatment is unnecessary or inappropriate. To the contrary, the record the government describes—including a long-standing pornography addiction and an escalation in severity—points directly to the need for a therapeutic setting equipped to address sexual-offense risk factors.

## II.      The § 3553(a) Factors Support a Recommendation for SOMP Placement

### A.  Nature and Circumstances of the Offense

The offense is serious, and the victims' experiences are real. An SOMP placement does not minimize the harm. Rather, it will directly confront the behaviors and cognitive distortions that have twice resulted in criminal conduct.

### B.  Mr. Hammond's History and Characteristics

The government notes that Mr. Hammond has struggled with a longstanding addiction, a history of instability, and failed attempts at treatment in the community. These characteristics are not excuses. Rather, they're precisely the reasons he requires a controlled, treatment-oriented custodial setting, rather than a general-population facility that lacks offense-specific programming.

Over the course of his life, Mr. Hammond has struggled to build deep, lasting relationships with others. This difficulty colors Mr. Hammond's reports of a mostly positive childhood, with his troubles starting early as his family's frequent moves made it difficult for him to make friends. As for the friendships that he was able to form, Mr. Hammond reports difficulty maintaining them because he never learned how to build trust with others. During the height of his pornography addiction, Mr. Hammond almost completely self-isolated, rarely leaving his house and maintaining no social life.

Honorable Lynn Adelman
June 22, 2026
Page 3

Since the death of his parents, Mr. Hammond no longer has any close familial relationships. He does not have contact with his sister or his children. His parents were an important source of stability in Mr. Hammond's life. After losing his mother, Mr. Hammond fell into a deep depression for which he received medication.

Mr. Hammond reported several intimate relationships during his adulthood, including those that led to the births of his two biological children. However, Mr. Hammond does not maintain a relationship with any of his former partners. His last romantic relationship ended in 2008, nearly twenty years ago, signaling difficulty building and maintaining intimate relationships.

Mr. Hammond also reports struggling with anger as a teenager. He lacked the tools that he needed to process his emotions in a healthy way. His difficulty in controlling his emotions contributed to behavioral issues and criminal conduct that characterized his adolescence and young adulthood. After his dad was diagnosed with brain cancer, Mr. Hammond fought off feelings of depression and grief by fueling his growing addiction to pornography. Even now, he reports an inability to process his emotions constructively, leading to avoidance and disconnection when faced with a stressful situation.

Lifelong trends of social isolation, intimacy issues, and emotional dysregulation, catalyzed by grief following the loss of his parents, contributed to the underlying pornography addiction that escalated to Mr. Hammond's involvement in child pornography distribution. While incarcerated for his previous offense, Mr. Hammond completed a treatment program. He also participated in treatment after he was released from custody, sometimes driving 75 miles each way to participate in treatment sessions. Ultimately, however, the treatment that Mr. Hammond has received did not prevent the relapse leading to the serious offense for which he has taken responsibility.

Information about Mr. Hammond's past does not excuse the severity of this offense, or mitigate the harm done, but it may suggest paths forward that can help address risk factors for re-offense that are directly relevant to Mr. Hammond's life and history.

     C.  Need for the Sentence to Protect the Public and Provide Correctional Treatment

Protecting the public requires more than incapacitation. Mr. Hammond will face lifelong registration, intensive supervision, and significant restrictions after release. The surest

way to reduce risk is to provide Mr. Hammond with evidence-based sex-offender treatment during incarceration, when he is most likely to complete it and internalize it.

FCI/FSL Elkton is one such facility offering a non-residential Sex Offender Treatment Program that is designed to target risk factors like emotional and sexual self-regulation deficits, criminal behavior patterns, and intimacy skills deficits that are associated with re-offense in sexual offenders. These cited risk factors map on closely to the deficits that Mr. Hammond has struggled with for most of his life. In such a program, Mr. Hammond would be encouraged, via empirically informed methods, to develop skills that can prevent future relapse.

If BOP determines he does not meet their criteria or must be designated elsewhere, the Court's alternative recommendation—to the nearest medium/low-security SOMP institution with comparable programming—will still guide BOP toward placing him where he can receive the programming needed to lower long-term risk.

### D. Reentry and Eventually Relocating

Mr. Hammond's hopes to relocate to the West Coast after release. This is not presented as a means to avoid accountability. He understands that any relocation requires Court and United States Probation Office (USPO) approval; a receiving district must accept the transfer; and he must comply fully with all registration and supervision conditions.

His long-term stability will require careful planning. That planning must begin now, with treatment, structure, and preparation for lifelong supervision. It would help if he did not return to the same environment that preceded two convictions.

### E. Restitution

Mr. Hammond understands that he will have a restitution obligation as part of the final judgment. He has requested additional support for the government's proposed restitution figures, and the government has been providing the materials he needs to review. Mr. Hammond is hopeful that the parties will be able to reach an agreement on restitution prior to the sentencing hearing so the issue can be fully resolved at that time. That said, should any outstanding questions remain or additional information be required, the defense will promptly notify the Court.

### III. Conclusion

Mr. Hammond respectfully asks the Court to adopt the parties' joint sentencing recommendation of ten years' imprisonment, and to recommend designation to FCI Elkton or FSL Elkton or, alternatively, to the closest medium to low-security SOMP facility offering comparable sex-offense-specific treatment. Such a recommendation aligns with the § 3553(a) factors and responds to the concerns the government raises. It best promotes both accountability and long-term public safety. Thus, for the reasons set out in this letter, we ask that the Court impose the jointly recommended sentence of ten years' imprisonment.

Sincerely,

_s/ Julie K. Linnen_
Julie K. Linnen